UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

MARIA F. WHITNEY, )
)
       *Plaintiff* )
)
v. ) No. 1:16-cv-00354-JAW
)
NANCY A. BERRYHILL, )
*Acting Commissioner of Social Security,*[1] )
)
       *Defendant* )

## REPORT AND RECOMMENDED DECISION[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred by formulating a physical residual functional capacity ("RFC") determination that was not supported by substantial evidence, and impermissibly discounted the opinion of the plaintiff's treating physician. *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 14) at 1-9. I find no error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Nancy A. Berryhill, who is now the Acting Commissioner of Social Security, is substituted for former Acting Commissioner Carolyn W. Colvin as the defendant in this suit pursuant to Federal Rule of Civil Procedure 25(d).
[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 17, 2017, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2018, Finding 1, Record at 22; that she had severe impairments of morbid obesity, degenerative joint disease of the right knee, anxiety, and depression, Finding 3, *id.*; that she had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she could never climb ladders, ropes, or scaffolds, kneel, or crawl, could occasionally climb ramps and stairs, balance, stoop, and crouch, needed to avoid concentrated exposure to extreme temperatures, humidity, and respiratory irritants, needed to avoid all exposure to unprotected heights and dangerous moving machinery, could carry out tasks in an environment with no fast pace or strict production quotas,[3] could adapt to ordinary changes in routine, could interact on a superficial basis with the general public, and could interact with coworkers and supervisors well enough to sustain work activity, but should have no intense social demands, Finding 5, *id.* at 25; that, considering her age (49 years old, defined as an individual closely approaching advanced age, on her alleged disability onset date, September 15, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 33-34; and that she, therefore, had not been disabled from September 15, 2013, through the date of the decision, March 15, 2016, Finding 11, *id.* at 35. The Appeals Council declined to review the decision, *id.* at 1-4, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

---

[3] The ALJ found that the plaintiff could carry out tasks in an environment with no "past" pace. Finding 5, Record at 25. I have presumed she meant "fast" pace. Nothing turns on the apparent error.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The statement of errors also implicates Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen*, 482 U.S. at 146 n.5. At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. The ALJ's Physical RFC Assessment

The plaintiff first argues that the ALJ's RFC formulation was not supported by substantial evidence. *See* Statement of Errors at 1-5. For the reasons that follow, I find no error.

3

In formulating the physical portion of the plaintiff's RFC, the ALJ considered the opinions of three medical experts: Robert Hayes, D.O., an agency nonexamining consultant, Stratton J. Shannon, D.O., the plaintiff's treating physician, and Karen Hover, M.D., an agency examining consultant. *See* Record at 31-32. She gave great weight to the opinion of Dr. Hayes, dated February 25, 2015, and only partial weight to those of Drs. Shannon and Hover, dated January 21, 2016, and November 7, 2014, respectively. *See id.* at 31-32, 159-63, 504-07, 738-741.

The plaintiff contends that this was not a permissible resolution of evidentiary conflicts because Dr. Hayes did not have the benefit of review of subsequent material evidence bearing on her right knee impairment and did not even deem the condition severe. *See* Statement of Errors at 2-4; *Eaton v. Astrue*, Civil No. 07-188-B-W, 2008 WL 4849327, at *5 (D. Me. Nov. 6, 2008) (rec. dec., *aff'd* Dec. 1, 2008) ("[A]s a general rule, [an agency] non-examining expert's report cannot stand as substantial evidence in support of an administrative law judge's decision when material new evidence has been submitted subsequent to its issuance, calling the expert's conclusions into question.") (citations omitted).

She adds that the ALJ compounded that error by misconstruing the raw medical evidence unseen by Dr. Hayes to support a finding that the knee impairment imposed no greater functional restrictions than those assessed by Dr. Hayes. *See* Statement of Errors at 4-5; *Eshelman v. Astrue*, No. 06-107-B-W, 2007 WL 2021909, at *3 (D. Me. July 11, 2007) (rec. dec., *aff'd* July 31, 2007) ("While the First Circuit does permit an administrative law judge to pick and choose among physicians' findings and opinions, it does not permit the crafting of an RFC based on the raw medical evidence of record unless common-sense judgments about functional capacity can be made.") (citations and internal quotation marks omitted).

4

The commissioner rejoins that the ALJ's reliance on Dr. Hayes was not misplaced because he took the knee impairment into account, in fact deeming it severe, and the ALJ supportably concluded that subsequent evidence did not call his RFC opinion into question. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 3-8. The commissioner has the better argument.

### 1. Dr. Hayes' Opinion

Dr. Hayes acknowledged that the plaintiff's allegations included knee pain but observed that a January 22, 2015, treatment note indicated that she moved easily and ambulated without difficulty. *See* Record at 158. He had the benefit of review of the Hover report, to which he indicated he gave great weight, noting that limitations due to obesity were supported by the evidence in the file, for the most part. *See id*. at 161.

Dr. Hover had diagnosed the plaintiff, *inter alia*, with bilateral knee and hip osteoarthritis, chronic low back pain, and morbid obesity. *See id*. at 507. She summarized her musculoskeletal findings as follows:

> No asymmetry or obvious joint deformity or atrophy however she was very obese and had trouble moving around the room, squatting, and getting up on the table or lying down. I did not appreciate any heat or tenderness. Her dexterity with her hands was good. She was not using any assistive devices. She had a normal range of motion of the neck, shoulders, elbows, or wrists and was able to perform repeated hand grip. She had normal range of motion of her back with very slight, probably less than 5 degrees, scoliosis. She had normal range of motion of the hips except that she only had about 45 degrees of external rotation of the right hip and on the left she had about 80 degrees of motion. She had full range of motion of the knees and ankles.

*Id*. at 506-07. She opined:

> This patient is able to sit although she needs a large chair. She is able to stand for short periods of time although it causes her ankles to swell. She is able to walk for short distances. She can lift, I would expect 20 pounds, even repetitively. She can carry for short distances. She really cannot bend well. She can handle objects. She can hear and speak. I would expect traveling to bother her with any prolonged sitting or lack of leg motion.

5

*Id*. at 507.

Based on the evidence then available, including the Hover report, Dr. Hayes found two severe physical impairments: osteoarthrosis and allied disorders, and obesity. *See id*. at 159. As the commissioner argues, *see* Opposition at 4, "osteoarthrosis" seemingly refers to the plaintiff's hip and knee condition, given that (i) Dr. Hover assessed osteoarthritis of the bilateral knees and hips but no other body part, *see* Record at 507, (ii) Dr. Hayes did not purport to discount that diagnosis, *see id*. at 159, 161, and (iii) the terms "osteoarthritis" and "osteoarthrosis" are synonymous, *see* Stedman's Medical Dictionary 1282 (27th ed. 2000) (defining "osteoarthritis" as "[a]rthritis characterized by erosion of articular cartilage, either primary or secondary to trauma or other conditions, which becomes soft, frayed, and thinned . . .; pain and loss of function result; mainly affects weight-bearing joints," and defining "osteoarthrosis" as synonymous with osteoarthritis).

Dr. Hayes assessed exertional, postural, and environmental limitations, the need for which he attributed to the plaintiff's morbid obesity, except that he explained that he also assessed environmental limitations as a result of her poor physical conditioning. *See* Record at 162-63. As the plaintiff points out, *see* Statement of Errors at 2, Dr. Hayes did not state that any of the assessed physical limitations was based on her knee condition, *see* Record at 162-63.

### 2. Subsequent Evidence Bearing on Knee Impairment

On July 30, 2015, approximately five months after Dr. Hayes issued his RFC opinion, the plaintiff complained to treating physician Dr. Shannon of right hip and right knee pain. *See id*. at 623. Dr. Shannon noted that, on examination, the plaintiff's "[k]nees showed abnormalities [and a] small effusion with decreased joint spaces and painful arc of motion." *Id.* at 624. He diagnosed her with internal derangement of the knee and referred her for an MRI of her right knee. *See id.*

An MRI of the plaintiff's right knee was obtained on August 7, 2015, and was compared with a prior MRI dated May 5, 2009. *See id.* at 595-597. The diagnostician's impression included the following:

> Markedly abnormal appearance of the medial meniscus. This has significantly progressed from prior MRI from 2009. Today, no normal body or posterior horn of the meniscus is visualized. There is a tear of the meniscal root with medial extrusion of the visualized part of the meniscus. I believe extensive tearing of the body and posterior horn of the meniscus is present, extending to the cranial and caudal meniscal surface. Some part of the anterior horn of the medial meniscus is seen. The cartilage within the medial compartment of the knee is suboptimally evaluated. I believe it is thinned and chondromalacia is very likely present.

*Id.* at 597.

Following the MRI, Dr. Shannon referred the plaintiff to Garrett Martin, M.D., an orthopedic surgeon. *See id.* at 611. Dr. Martin saw the plaintiff on September 29, 2015. *See id.* In addition to reviewing the report of the August 7, 2015, MRI, he obtained an x-ray of the plaintiff's right knee that revealed "medial joint space narrowing" with "some narrowing under the kneecap" and "[d]egenerative arthritis." *Id.* at 615. He noted:

> Recommended [that the plaintiff] see Dr. Shannon to discuss [the findings of] the MRI. Explained to her that the pain she is having is most likely coming from the arthritis in the knee. Discussed managing arthritis non-surgically for as long as she can with medication, injections and when she gets to the point when she cannot do the things she needs and wants to do on a daily basis then she has two options[,] living with it or considering knee replacement surgery. She is currently signed up for a gastric bypass. Discussed the modifiable risk factors which are the things we can improve upon prior to surgery.

*Id.* at 615-616.

The plaintiff returned to Dr. Shannon for an appointment on October 2, 2015. *See id.* at 618. Dr. Shannon noted that the plaintiff "saw ortho and at some point is going to need a knee replacement." *Id.* On October 9, 2015, on referral from Dr. Shannon in connection with her

7

diagnosis of morbid obesity, the plaintiff underwent an outpatient physical therapy evaluation "pending possible upcoming surgical weight loss." *Id*. at 646.

The physical therapist noted that the plaintiff's range of motion was limited by "soft tissue approximation" but that her motor control was "[o]bserved to be quite good, as demonstrated from exercise tolerance and activities as seen today." *Id*. She noted that the plaintiff denied altered sensation and noted "mild discomfort, but this was not elicited with today's activities." *Id*. at 646-47. With respect to "Mobility," she noted: "This lady does remain active within the home and community." *Id*. at 647. She stated that the plaintiff's gait and balance were "within normal limits" and that her endurance was "[n]ot tested, but she is able to walk long distances without the need to rest, and without the use of an assistive device." *Id*. With respect to "Home and Family," she noted: "She remains independent." *Id*.

Under the heading "Assessment," the physical therapist wrote:

> This is a pleasant 51-year-old female, pending possible upcoming surgical weight loss. She did quite well to follow all concepts of preoperative and postoperative mobility and exercises that surround this surgery.

*Id*. Under the heading "Goals," she noted: "The goal was to have this patient independent with the above concepts by the end of this visit; this goal is believed to have been met." *Id*. Finally, under the heading "Recommendations," the physical therapist wrote: "The recommendation is to discontinue physical therapy." *Id*.

On January 21, 2016, Dr. Shannon completed a physical RFC assessment in which he indicated that the plaintiff could, *inter alia*, occasionally lift and carry less than 10 pounds; stand and walk, with normal breaks over an eight-hour day, for less than two hours; sit for about four hours during an eight-hour day; sit for 60 minutes before needing to change position; stand for 15 minutes before needing to change position; and needed to walk around every 90 minutes for a five-

minute period. *See id.* at 738-39. He also found that she would be absent from work about twice a month because of her impairments or treatment. *See id.* at 741. Dr. Shannon attributed the exertional limitations that he assessed to the plaintiff's morbid obesity and "severe osteoarthritis, knees, shoulder and possibly hip[,]" as well as "poorly controlled diabetes with neuropathy." *Id.* at 739. He later elaborated: "Her knees are basically shot and would benefit from total knee replacements." *Id.* at 740.

### 3. ALJ's Analysis

In the context of summarizing the evidence of record, the ALJ described the results of the October 2015 physical therapy evaluation as follows:

> In October 2015, the [plaintiff] underwent a physical therapy evaluation in the context of bariatric surgery. Her range of motion was limited by her size, but her motor strength was judged to be quite good, as shown by her exercise tolerance and reported activities of daily living. . . . Her gait and balance were normal. Her endurance was not tested, but she reported being able to walk long distances without the need to rest and remained independent with activities of daily living. She was independent with exercises and pre- and post-operative mobility surrounding weight loss surgery, so it was concluded that she did not require ongoing physical therapy.

*Id.* at 28 (citation omitted). In the context of deeming the plaintiff's allegations "only partially credible[,]" the ALJ stated:

> With respect to physical limitations, the clinical findings do not support the severity of the limitations alleged. The orthopedic evaluation recommended non-surgical management of knee symptoms for as long as possible, until [the plaintiff] is no longer able to perform activities of daily living. Similarly, the physical therapy evaluation indicated that the [plaintiff] is independent with activities of daily living, had a good exercise tolerance, and can walk long distances without stopping to rest. The findings did not reflect difficulty with gait and balance or strength that would support less than the light exertional level. The [plaintiff's] assertion that she is in need of a knee replacement is not supported by the totality of the evidence. While she may eventually be a candidate for one, the assessment by her orthopedic specialist and her demonstrated abilities in daily activities do not support that she is a current candidate.

*Id.* at 30 (citations omitted).

9

The ALJ then went on to weigh the conflicting medical expert opinion evidence, affording the Hayes opinion great weight. *See id.* at 31. She explained:

> This assessment is generally consistent with the evidence of record, which reflects morbid obesity that limits mobility. While there is evidence of a knee impairment that was not considered by Dr. Hayes, this is currently being treated conservatively. The physical therapy evaluation from the fall of 2015, after this impairment was assessed, did not document difficulty with ambulation or knee dysfunction or limitations in daily activities that would support a more limited residual functional capacity than the light exertional level. The exertional and postural limitations in the residual functional capacity adequately account for her knee pain and limitations from obesity.

*Id*.

### 4. Plaintiff's Argument

The plaintiff contends that Dr. Hayes not only assessed no restrictions attributable to her knee impairment but also failed even to find it severe. *See* Statement of Errors at 2. She argues that, in those circumstances, the medical evidence generated after Dr. Hayes' opinion essentially rendered that opinion obsolete. *See id*. at 4. She contends that, while the ALJ acknowledged that "there is evidence of a knee impairment that was not considered by Dr. Hayes," she erroneously dismissed that evidence on the basis that the plaintiff was being treated conservatively for her knee. *Id*. (quoting Record at 31). For example, she asserts that the ALJ mischaracterized the October 2015 physical therapy evaluation, arguing:

> The [plaintiff] had not been referred for actual physical therapy and there was no determination as to whether [she] needed ongoing therapy. The "goal" of the evaluation was to determine whether the [plaintiff] was able to understand the concepts of preoperative and postoperative mobility and exercises surrounding a possible bariatric surgery. Because the [plaintiff] was able to understand those concepts there was no need for further consultation.

*Id*. at 5.

The plaintiff argues that, at bottom, the ALJ substituted her own lay judgment for that of experts, impermissibly construing the raw medical evidence to conclude that the plaintiff's right knee impairment imposed no greater limitations than assessed by Dr. Hayes. *See id.*

The commissioner rejoins that Dr. Hayes did in fact find a severe knee impairment and that the ALJ pointed to substantial evidence in support of her conclusion that the evidence he did not see did not call his RFC opinion into question. *See* Opposition at 4-8. I agree.

First, as discussed above, Dr. Hayes' finding of a severe impairment of "osteoarthrosis and allied disorders" is most reasonably construed as based on Dr. Hover's diagnosis of osteoarthritis of the bilateral knees and hips. Second, for the reasons discussed below, the ALJ supportably concluded that the subsequent evidence was reasonably consistent with Dr. Hayes' RFC opinion.

As the commissioner observes, *see* Opposition at 7-8, an ALJ is competent to judge whether later-submitted evidence calls an expert's RFC opinion into question, *see, e.g., Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *4 (D. Me. Sept. 27, 2012) (rec. dec. *aff'd* Oct. 23, 2012), *aff'd*, No. 13-1001, slip op. at 1-2 (1st Cir. June 7, 2013) (The ALJ "supportably found that the raw medical evidence postdating the [agency] nonexamining consultants' reports was essentially cumulative and, therefore, did not call into question their conclusions regarding the severity of his mental health limitations. This analysis did not exceed the bounds of the administrative law judge's competence as a layperson.") (citations omitted); *Breingan v. Astrue*, No. 1:10-cv-92-JAW, 2011 WL 148813, at *6 n.5 (D. Me. Jan. 17, 2011) (rec. dec. *aff'd* Feb. 22, 2011) ("While an administrative law judge is not competent to assess a claimant's RFC directly from the raw medical evidence unless such assessment entails a common-sense judgment, he or she is perfectly competent to resolve conflicts in expert opinion evidence regarding RFC by, *inter*

*alia*, judging whether later submitted evidence is material and whether there are discrepancies between a treating source's opinion and his or her underlying progress notes.") (citations omitted).

The ALJ reasonably concluded that the evidence unseen by Dr. Hayes indicated that the plaintiff's right knee was being treated conservatively. The plaintiff's orthopedic surgeon, Dr. Martin, had stated that when her knee condition kept her from doing "the things she need[ed] and want[ed] to do on a daily basis[,]" she would need to decide whether to opt for knee replacement surgery. Record at 615-16. From that, the ALJ reasonably inferred that the knee had not *yet* kept the plaintiff from doing the things she needed and wanted to do on a daily basis.

Likewise, the ALJ reasonably construed the October 2015 physical therapy evaluation report to indicate that the plaintiff's knee, as of that time, imposed few, if any, restrictions, based on a combination of results of evaluation and the plaintiff's self-reports. The physical therapist observed that the plaintiff's motor control was "quite good, as demonstrated from exercise tolerance and activities as seen today[,]" noted that the activities that the plaintiff performed in her presence did not elicit even mild discomfort, although the plaintiff reported having had such discomfort, and found that the plaintiff's gait and balance were "within normal limits." *Id*. at 646-47.

In sections of the report that implicitly relied on the plaintiff's self-reports, the physical therapist indicated that the plaintiff "remain[ed] active within the home and community[,]" "remain[ed] independent[,]" and, although her endurance was not tested, was "able to walk long distances without the need to rest, and without the use of an assistive device." *Id*. at 647.

In her statement of errors and through counsel at oral argument, the plaintiff contended that the ALJ misconstrued the physical therapy evaluation, which was intended solely to ascertain whether the plaintiff was able to follow concepts of preoperative and postoperative mobility and

exercises in conjunction with planned surgery. *See* Statement of Errors at 5. However, regardless of the purpose of the evaluation, the physical therapist plainly evaluated the plaintiff's level of mobility. The ALJ did not err in interpreting the results of that evaluation as consistent with the findings of Dr. Hayes.

Remand, accordingly, is unwarranted on the basis of this point of error.

## B. The ALJ's Consideration of the Opinion of Dr. Shannon

The plaintiff's second, and related, argument is that the ALJ failed to properly evaluate the opinion of the plaintiff's treating physician, Dr. Shannon, the "only acceptable medical source to offer an opinion on the Plaintiff's physical RFC after the 2015 MRI[.]" Statement of Errors at 5-9. She asserts that Dr. Shannon's opinion was not inconsistent with the medical record and, therefore, entitled to controlling weight. *See id*. at 8. The commissioner contends that the ALJ supportably gave that opinion partial weight. *See* Opposition at 8-12. I agree.

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.*[4] An ALJ may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she]

---

[4] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant or others. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

13

give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2016) ("SSR 96-8p"), at 150 (an ALJ can reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

As noted above, in his January 21, 2016, physical RFC assessment, Dr. Shannon found limitations in the plaintiff's exertional capacity (lifting, carrying, standing, walking, and sitting), postural activities (stooping/bending, crouching, and climbing stairs/ladders), and ability to reach, as well as a need for environmental limitations, including avoidance of all exposure to extreme heat or cold or hazards such as machinery and heights. *See* Record at 738-40. He also found that she would be absent from work about twice a month because of her impairments or treatment and stated that he believed that she suffered from some pain that would "detract from concentration and staying focused." *Id*. at 741.

Dr. Shannon attributed the exertional limitations that he assessed to the plaintiff's morbid obesity, "severe osteoarthritis knees, shoulder and probably hip – limited exertional capacity and poorly controlled diabetes with neuropathy." *Id*. at 739. He elaborated with respect to her knee impairments: "Her knees are basically shot and would benefit from total knee replacements." *Id.* at 740.

> The ALJ gave only partial weight to the Shannon assessment, explaining:
>
> While the evidence does support some exertional and non-exertional limitations, the extent of the limitations assessed by Dr. Shannon is not explained in this report or supported by Dr. Shannon's treatment records, as discussed above. Dr. Shannon limited standing and walking to less than 2 hours, but also stated the [plaintiff] can walk 90 minutes at one time, which seems internally [in]consistent. He stated the [plaintiff] can sit less than 4 hours per day, but is able to sit for 60 minutes at one

14

> time. I noted that the [plaintiff] sat for at least this long during the hearing with no indication of discomfort. Dr. Shannon also noted in his report that the [plaintiff] would benefit from a total knee replacement, however, this is not consistent with the orthopedic specialist's report, as discussed above, who recommended that the [plaintiff] postpone knee surgery as long as she is able to perform her activities of daily living. Sometimes medical providers who are not familiar with our program opine things that are helpful to the [plaintiff], but are not consistent with medical evidence of record, [and,] thus, cannot be afforded more than partial weight.

*Id*. at 31-32.

The plaintiff contends that the ALJ erred in failing to accord greater weight to the Shannon assessment in view of Dr. Shannon's five-year treatment relationship with her and his access to records unseen by Dr. Hayes, including the 2015 knee MRI and x-ray, and that the reasons she supplied for partially discounting his assessment are not supported by the record. *See* Statement of Errors at 5-9. Specifically, she argues that:

1. Contrary to the ALJ's finding, Dr. Shannon did explain the basis for every category of limitations assessed; for example, attributing the assessed exertional limitations to her morbid obesity, severe osteoarthritis in her knees, shoulder and probably hip, and diabetes with neuropathy. *See id*. at 7.

2. Contrary to the ALJ's finding, Dr. Shannon did not state that the plaintiff could walk for 90 minutes at a time. *See id*. Rather, he stated that she must walk around every 90 minutes for five minutes each time. *See id*.; Record at 739. Thus, there is no inconsistency. *See* Statement of Errors at 7.

3. The ALJ failed to explain the asserted inconsistency between an ability to sit for 60 minutes at a time and an ability to sit for a total of less than four hours in an eight-hour workday. *See id*. at 7-8.

15

4. Contrary to the ALJ's finding, Dr. Shannon's statement that the plaintiff would benefit from a total knee replacement was not inconsistent with Dr. Martin's opinion that she should delay that surgery for as long as possible. *See id*. at 8.

The plaintiff argues that the ALJ's error in assigning less weight than was owed to Dr. Shannon's opinion was not harmless because, had the ALJ had assigned the proper weight, she would have found the plaintiff capable of less than sedentary work and, therefore, disabled. *See id*. at 8-9.

Nonetheless, for the reasons argued by the commissioner, *see* Opposition at 8-12, the ALJ supportably accorded the Shannon opinion partial, rather than controlling, weight.

First, the ALJ did not find, as the plaintiff suggests, *see* Statement of Errors at 7, that Dr. Shannon did not explain his limitations. Rather, the ALJ found that Dr. Shannon had not explained the *extent* of the limitations assessed. *See* Record at 31. Dr. Shannon primarily identified diagnoses in support of his findings, *see id*. at 738-41; however, as the commissioner points out, the diagnosis of a condition, without more, fails to inform a fact-finder about a condition's severity, *see, e.g., Brown v. Colvin*, No. 2:13-cv-473-JHR, 2015 WL 58396, at *2 (D. Me. Jan. 5, 2015) (a diagnosis, alone, does not establish a condition's severity).

Second, the plaintiff does not challenge the ALJ's separate finding that Dr. Shannon's assessed limitations were inconsistent with his own treatment notes. *See* Statement of Errors at 7-8. In any event, as the commissioner notes, *see* Opposition at 10, this finding is supported by substantial evidence for reasons the ALJ discussed elsewhere in her decision, for example, that Dr.

Shannon noted in February 2014 and April 2015 that the plaintiff had denied feeling tired or poorly, *see* Record at 26-27, 451, 632-33.[5]

Third, the ALJ supportably deemed Dr. Shannon's finding that the plaintiff could sit for only 60 minutes at a time at odds with the fact that, during the hearing before the ALJ, she "sat for at least this long . . . with no indication of discomfort." *Id.* at 31. *See also Medeiros v. Astrue*, Civil Action No. 11-10465-DJC, 2012 WL 6771837, at *7 (D. Mass. Dec. 26. 2012) (ALJ's observations of plaintiff's behavior at hearing were appropriately taken into consideration in weighing conflicting evidence).

Fourth, and finally, the ALJ reasonably deemed Dr. Shannon's opinion that the plaintiff would benefit from a total knee replacement inconsistent with the recommendation of the plaintiff's orthopedic surgeon, Dr. Martin, that she postpone knee surgery as long as she was able to perform her activities of daily living. *See* Record at 32, 611, 615-16. Dr. Martin's notes indicate that the plaintiff had not reached that point, a finding elsewhere corroborated, as the ALJ noted, by results of the October 2015 physical therapy evaluation. *See id*. at 30, 646-47. Indeed, in his October 2, 2015, note, Dr. Shannon stated that the plaintiff "*at some point* is going to need a knee replacement." *Id*. at 618 (emphasis added). The ALJ's finding that the plaintiff was not in imminent need of knee replacement surgery is supported by substantial evidence.

As the commissioner argues, *see* Opposition at 12, even if not every reason provided by the ALJ for giving partial weight to the Shannon opinion was a good one, the ALJ provided several good reasons for that assignment of weight. No more was required. *See, e.g., Allen v. Astrue*, No. 2:10-cv-35-DBH, 2010 WL 5452123, at *5 (D. Me. Dec. 28, 2010) (rec. dec., *aff'd* Jan. 18, 2011)

---

[5] At oral argument, the plaintiff's counsel did challenge this finding. However, even assuming *arguendo* that the plaintiff did not waive the point by failing to raise it in her statement of errors, *see Farrin v. Barnhart,* No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006), it is unavailing for the reasons stated herein.

(when an ALJ provided good reasons for weight given to treating physician's opinion, court did not need to consider whether the other stated reasons withstood scrutiny).

Remand, accordingly, is also unwarranted on the basis of this point of error.[6]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 2nd day of July, 2017.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[6] The commissioner further requests, "out of an abundance of caution," that, to the extent the Statement of Errors can be read to request a declaration of disability and remand for payment of benefits, the court deny such relief. Opposition at 12-13. I do not read the Statement of Errors to request such relief. In any event, should the court agree that the decision is supported by substantial evidence, any such request would be mooted.